Good morning, everybody. Good morning. Good morning. This is a consolidated matter. I'm not going to read off all the numbers. We will call it a case of Apex Construction of the United States Virgin Islands. And it starts with 22-2675 and goes through 22-2680. Mr. Drewers, how are you, sir? Good morning, Judge. How are you doing? All right. Well, I think somebody may need to make a comment.       Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning.    This is Judge Restrepo for Apex Construction. And I'd like to reserve five minutes for discussion. Sure. Could you make sure you speak into the microphone. Because we've had issues with folks in remote places. Judge Smith, are you good? I didn't really feel I'm remote. Try to talk Judge McKee into a sitting here in the equitable climate. I'll try my best. In this case, your honors, the district court made two errors up to this court's plenary review. The first, it erred in abstaining and dismissing the complaints under the tax comedy doctrine. And the second, it erred in concluding that estoppel does not apply against the GPI. As to the tax comedy doctrine, this court can dispose of this issue on a more limited grounds. In particular, that the appellants only sought monetary relief in drafting the complaint, and specifically, not ask for equitable declaratory in order to bring claim under section 1983, in order to request damages. Counsel, could I stop you right there at that characterization? Because it's curious to me, as we try to draw the distinction between legal remedies, that is a remedy for damages and equitable. Clearly, injunctive relief is not the question here. But it does strike me that there is something very similar in what is being requested as a remedy by the plaintiffs, as very akin to restitution or disgorgement. And those are classic equitable remedies. So is this really a suit for damages? I would say so. Because the, I believe it's 33 section 1692, provides for the statutory right to file the refund claim, wait the six-month statutory period, and then bring a refund suit. If a refund, there's the key question. I had exactly the same thought and concern that my colleague in the farm-to-farm claim about the women did. Is there any issue that the refund is owed? There's no issue that you pay the excess tax under a statutory regime that's not been struck down under the Government Coverage Clause. And they deserve more territory for it. That's not in the debate, is it? No, that's not in the debate. But to put a little fine point on it, Judge McKee, it wasn't the statutory scheme that was struck down. It was excess tax. The failure to enforce it against you. It was not a facial, recall it was not a facial attack. It was an as-applied attack. And so therefore, the legislature didn't have to amend the statute. All that had happened was the GI had to implement it in accordance. And that was simply against the usual reasons of authority. But that's still, in terms of where I was going, and Judge, this point, it does seem like what you're asking for is more in the nature of a disgorgement or a return of funds that you have expended, not necessarily a damaged money. I would disagree, Judge McKee, because under that logic, every tax refund claim that's been invoked, whether it be under the Internal Revenue Code, could be characterized as such. But what's wrong with that? Yeah, that may well be the case. Do you have any authority that actually characterizes what the plaintiffs here are seeking as damages using that term? Okay, I'm going to have to, and I'll get to that by saying this. In looking at the Supreme Court's decision in Quackenbush, and this quote here, under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief slot is equitable or otherwise discretionary. Because this was a damaged action, we conclude that the district court's remand was an awarded application for Burford doctrine. Subsequent, in March of this year… How does that answer the question? I mean, you're trying to put the rabbit in the hat. We're trying to get to what's equitable and what is legal in the way of remedies, and more specifically, whether or not what is sought here is damages. And to the extent that that distinction matters, and it does seem to matter, but it also doesn't seem to clearly and cleanly resolve every controversy like this, how has your response helped me at all in trying to understand why what you seek is damages? And I followed up with Justice Smith with citations of this court's decision in March of this year merits B. Richards, that's 62 Bedford 764. And in that case, there was a Section 1983 claim against the Penn Department of Transportation officials in their individual capacities seeking damages. And in that case, this court concluded after reviewing Burford and concluding that, and stating again under Burford that it does not allow federal court to dismiss a claim for damages, citing Quackenbush, and then it goes on to say here, and when federal plaintiffs praise for damages, the equitable discretion upon which abstention rests does not permit dismissal. And it goes on to conclude, because merits Section 1983 claims against Penn DOT officials in their individual capacities seek damages, they cannot be dismissed on abstention grounds. I would submit, Your Honor, if it is impermissible to dismiss a Section 1983 case on abstention grounds against individuals, then logic bears out that a refund action, which is provided for under local level law, is an action of law. Respectfully, I don't think that goes at all to the specific question I've asked and that Judge McKee has also focused on as to what are damages and whether or not what is sought here is in the nature of damages or restitution. So let me ask you specifically, though, about the case you've just cited. What was it that these DOT employees were seeking in the way of damages? What kind of recompense or damages were they seeking in that 1983 action? Actually, the property owner brought a Section 1983 action against the Penn DOT seeking declaratory and injunctive relief and alleging that Penn DOT's acquisition of easements in a combination action violated federal constitutional and Pennsylvania law. So the 1983 claim, that's what I had to do. That's just challenging the constitutionality of bringing a federal challenge to a state regulation. That's not on the table here. But the point being is if you cannot dismiss out an action of law under Section 1983 because it asks for damages, I submit that you cannot dismiss out a Burge Islands refund suit under Burge Islands statutory local law that provides for a refund because that is also damages. I would submit that when you look at fair assessment, that fair assessment case was very clear in limiting Section 1983 damages to certain circumstances. But this court's decision in merit states that you can get Section 1983 damages and it's impermissible or improper to dismiss them out in certain circumstances. So it seems to me that if you can get damages under Section 1983 in certain circumstances, you should be able to get damages under a tax refund statute, which is a statute that is waived governmental sovereign immunity, required an exhaustive requirement to file a claim for a refund, and then wait six months to file a suit. As a matter of discipline, you can get relief. The question, what we're concerned is, what is the substance of that relief? Is it relief in the form of damages? Or is it relief in the form of dischargement? Or is something like restitution, which is more of an equitable form of relief? Well, Your Honor, how about this from a preconception looking at it? If you look at the judgment, the judgment in a tax refund case is that the judgment is entered in favor of the plaintiff against the defendant, government, and agency in the amount of X. But it is not. It is not an order directing, providing equitable relief, saying that the official, the director of the BIR, the head of the Treasury, the head of the IRS, must pay the plaintiff X. And as a result, it's not a judgment directing a government official to do or not do something. It's just a prototypical judgment. Plaintiff gets X, and then in theory, plaintiff has to take a judgment and proceeds to collect on it. And so in that sense, it's like any other action in law. It is not an equitable action. It is not asking for equitable or declaratory relief. Let me ask another and admittedly much broader question, counsel, because I think I've failed to get to the root of what my concern is here in the last few questions I've asked. You're familiar with the Bluebirds Castle case that this court decided back in 2003, I think it was. You cited it once, though not for what I'm about to raise, but I'm interested in hearing what you have to say in response to a statement by this court, and it was a statement. It was not a holding. I want to say that at the outset. In that case, the government of the VI had contended that the plaintiff's action was nothing more than a routine challenge of the alleged excessiveness of property tax assessment. And accordingly, what they contended was that it is a purely local tax question subject only to territorial court jurisdiction. That's how our court characterized the claim. And then in the next paragraph, what our court said is where this is the case. In other words, the contention of a purely local tax question. Where this is the case, jurisdiction in the district court is improper. What do you make of that? I don't know if that statement is correct, and I don't know if that's correct. Assume it's correct. Humorous. I just don't know how I can reconcile that with the Supreme Court's decision in Quackenbush, with this court's decision in Merrits. And my recollection of Bluebirds was it was a challenge to the assessment method. It was a challenge to the assessment method, I think, which is why I indicated the case is different from this. I believe so. But I believe it was a combination of the actual statutory scheme was a federal one that had an implication on local level. You're correct. And that's why I indicated this is not a holding. This is language from the case. But it still, I think, is language relevant to our discussion. Yes, there was considerable discussion in the Bluebirds Castle case. Regarding the interaction of the U.S. government and the territorial government and the federalism concerns and the extent to which federalism actually applied in the territory. You're quite correct in that distinction. But nevertheless, these are words we used, and I think we have to take them at least into account and try to square them with what you're asking. I don't have a problem with that as a conceptual level judgment. But to the same token, you have to square them with the words that I've repeated in this court's recent decision in merit. And I would submit that what I just quoted to you in merit, that was an actual holding as compared to a, I think, what you characterized, Judge Smith, as a common. And so to the extent that there is any tension between those two cases, I would submit that merit, which was just issued in March of this year, would control. To the extent the language that I cited to you is relevant, if it is, to the extent, I assume that you would agree that what we have here in the excise tax is a purely local tax question. Would you agree with that? I would agree that the tax regime itself is under local law. It does not implicate a federal law as to what happened in Bluebirds. That I would agree with. Obviously, the improper application of it violated the Dormant Commerce Clause, which this court has already acknowledged in Reef Code 2. Can you root the district court's conclusion, assuming tax coverage applies, that there is a plain, adequate, complete remedy available in Bluebirds? Absolutely not. Why not? Well, first, I would submit that the entire point of the evidentiary hearing we have before Judge Miller, where we put in all that record evidence and, in particular, I do want to pull this court's attention to Documentaries 18 and 15-1, where I move this court to independently take judicial notice, both of the BI legislature's hearing that resulted in Act 8468 and in the reports from the administrative office of U.S. Courts that details the case count of the District Court of Virgin I also moved at the trial level, which Judge Miller granted, to take judicial notice of the BI Superior Court reports that detail the case count. And I believe for the following reasons. We've got an increase in case counts at the local level to the tune of 385 per year. But how do we draw the line? How do we determine what number falls on the company local side of the line and what number of backlogged falls on the other side of the line? I don't believe that you have to make a decision just on a number of bases alone. I would submit that when you take a look at the number of bases, you take a look at the testimony from the witnesses, that there's no guarantee of repayment, that the reserve fund under 3 Virgin I's Code Section 179 is not funded. Let me stop here. The guarantee of repayment, the money's coming from the same place. So if the District Court ordered repayment or the VI Court ordered repayment, the money's still coming from the same fund, right? Well, it's actually not coming from a fund. It's coming from the same place. However, I believe that this Court's decision in Garrett, which I believe is from 1978, is from the 70s, stated that for purposes of whether something is plain, adequate, and complete, it is not plain that there's not a guarantee of certainty of repayment. Counsel, you're not suggesting that there's any kind of institutional breakdown within the territorial courts of the Virgin Islands, are you? Isn't your position nothing more than a comparative analysis of the case inventories, and a very, very rough comparison, it seems to me, of the case inventories between the District of the Virgin Islands and the territorial courts? I would say no, Your Honor, Judge Smith. I would quote to you the statements of the Virgin Islands Senators when they found legislative findings as to why they decided to enact Act 8468 to give mandatory trial preference because cases were taking literal decades to resolve. Federal courts are subject to congressionally mandated periods of time during which they must dispose of certain types of cases. First of all, the Speedy Trial Act is the most obvious of them, but we have time limits even within the class action area. So I'm not sure how far that gets you. In fact, it doesn't, by my estimation and experience as a judge in a state court system, get you very far. If you were suggesting an institutional failure here, an institutional breakdown, that would seem to be a different matter. But I don't know, without that, what are the rules when you get into comparative analyses of case inventories, the times for disposition, the types of cases are also highly relevant for comparative purposes. Would you agree with that latter statement? Yes, Judge. I'm not going to be able to say that. It all goes into proverbial soup. I'm not going to be able to say that there's one particular criteria that's going to be outcome determinative. It's going to be a bunch of criteria when you look at it holistically. And I submit that the legislature actually looked at it holistically and made numerous, and I would submit damning, legislative findings as to how poorly the V.I. Superior Court is functioning. And that's in addition to, and I would submit, Your Honors, and I cited that the district court in Great Bay came to the same conclusion that there was no, the Superior Court didn't provide a plain, adequate, and complete remedy back in 2018, that the factual basis as evidenced before the evidentiary before Judge Miller is the same, if not worse. And that's consistent with a bunch of cases, including the first service decision in Walmart, Puerto Rico, which found that the Puerto Rican state courts didn't provide that remedy, and as a result, comedy was not as clear. I'm seriously missing something that is about to be added from the beginning. I understand why you can't get relief from the judgment fund because the judgment fund is not there to pay. Jack Sands has got to get back to the legislature. There's testimony that, to the witnesses and to Ms. Eels of our collection, the V.I. has never failed to enact legislation to give a refund. It seems to be clear, and I'm not sure they're agreeing to it or not, but money could be moved upon an act of legislature, could be moved out of the judgment fund to pay to a different fund or a greater fund to establish a refund. What I'm trying to get at is, if it's clear they move the refund, and I'll ask you or your colleague a question, I'm not sure why the simplest way to get it isn't to pursue the remedy of getting the refund. They're trying to get the legislation to have the legislature approving the funds to pay your refund. Is it that you need the judgment to go to get the money out of the judgment fund? Is that it? Well, one, assuming that money is going to come out of the judgment fund, I do need a judgment, right? And then assuming that I need it. But you say, why do you need money out of the judgment fund? Why not see the act of the legislature to move money into a fund which would allow payment of a tax refund? Could I do that? I guess in theory. But that presupposes that I have a judgment to go to the legislature. No, you don't need a judgment to get it. You could just get a refund request that is approved. Well, no, but if you're going to get a refund, it seems to me everybody that gets a refund doesn't go to the judgment fund. They can't go to the judgment fund. What you would do would be to get the legislature, in this case, anyhow as I understand it, to enact legislation to appropriate funds to pay that refund. And according to the record, that's never – there's never been something like that that has not happened in the recent past. I don't know. I don't think the record bears it out. I would submit this, Judge McKee. If you're asking in the abstract would I have a problem going to the legislature and asking for money, no, of course not. I don't do that. But that doesn't mean that I don't still get my judgment and that I can do something with my judgment. I'm very hesitant to think that I'm going to be able to go to the legislature and ask for money to pay for a judgment that I don't yet have. Well, you wouldn't do it. The FBI would do it. Well, fine. But I've got no control. I can't make a government official prioritize my request for a refund when the evidence is that the GBI prioritizes other things in particular, allotments in government payroll. And so I understand that there's going to be an order of priority. Certain things have to be done. But, like, I can't force anyone in the GBI to do what you would submit. And as a result, I don't think that it's appropriate for me and my client to be left at the whim of pleading and asking government officials, come on, please, would you go to the legislature and try to get some money, which is actually the very issue the First Circuit found to be problematic in Walmart, Puerto Rico, that it would literally take decades, even using the Puerto Rican judgment fund for Puerto Rico, the Walmart of Puerto Rico. It is a matter of several months. I don't know how many decades here. Well, here's the thing to be judged. Between these consolidated cases and the other case that brought the issue of the tonnage, which is not part of this deal that is still pending from this court, the total amount is in excess of $3 million. And that's before statutory interest. If it comes out of the judgment fund, which is the maximum amount of that fund has been $350,000 per year, we're looking at in excess of 10 years for these excise taxes on just these cases, the consolidated cases below. And that's not counting all the other excise tax cases that were submitted for refund that are pending, that I don't represent those taxpayers, and I don't have insight or knowledge of how many other ones are there. But I'm going to expect that after this court's decision in brief code 2, I'm not the only attorney that advised my client to file a tax return. So I fully expect that. There's a lot more money out there that's due to taxpayers. But the one thing I would like, if I could have a moment to address this Estoppo. I would submit, Your Honor, is that Estoppo in this case is outcome dispositive. Reef code. Where in Reef code did we mention coding, tax coding? This court did not. Because the GDI did not raise it in its opening brief. But it did raise comedy before the disaccord of the Verge Islands. And Judge Gomez did not, credit did not find for comedy. Consequently, the issue was actually raised in Reef code. Yeah, but it wasn't decided how do you get issue preclusion out of that? If it was raised but not decided, how do you get issue preclusion or collateral Estoppo out of that? Well, I think, from my understanding of rest unit copy, issue preclusion is it precludes not only issues that were raised and decided but could have been raised but were not decided. Were they the same parties? Were they the same parties? In Reef code? Yes. Across the board. It's not my client. It was just Reef code versus GDI. Those are the parties in Reef code. But as to why Estoppo should be applied against the GDI, Mendoza submitted a Supreme Court case, and the issues and the factors that animated the Supreme Court's decision in Mendoza simply do not apply to state and territorial governments. You know, Mendoza talked about federal government being the largest litigator in federal courts, about the Solicitor General generating circuit splits, which is an express provision under Rule 10 of the Supreme Court rules for cert jurisdictions. Those decisions aren't present here because the GDI litigates before one federal trial court and is appealable to one court, this court, which is why both the Alaska Supreme Court and the Pennsylvania Supreme Court determined that Mendoza does not apply to state governments, and I would submit that if this court concludes, and it should not, that Estoppo does not apply to the GDI, you're going to have a very interesting situation where the Pennsylvania litigants will be subject to Estoppo at the state level and incentivize to have Pennsylvania provide or litigate all its cases at the federal level because it would not be subject to Estoppo if this court so concludes. And I would submit that that just doubles down as to why Estoppo should not, and Mendoza should not be applied against the GDI. So with that, I'll see you all in the morning. Let's take a five-minute recess before we hear from Mr. Francis. Please rise. This court stands in recess. Please rise. Good morning, Your Honor. Good morning, Mr. Francisco. Whenever you're ready, sir. Thank you, Your Honor. May it please the court. Your Honor, the government of the Virgin Islands, excuse me, Assistant Attorney General Michael Francisco representing AFL-E, United States Virgin Islands. Your Honor, the government of the Virgin Islands would stand on its brief as to the correct decisions of the district court regarding tax economy and the application of non-mutual offensive collateral Estoppo. I've never heard that term before. It was always collateral Estoppo ratio. I've never heard Estoppo as none, where it was none. It is a mouthful, Your Honor. Yes, sir. I would just, I'd like to direct our conversation to the points the court just made. First, regarding the restitutionary nature of a refund. I think that if the court looks to chauffeurs, teamsters, helpers, 494 U.S. 558, Pennside 570 from 1990, the U.S. Supreme Court considered whether damages would equate to or could equate to a restitution or a disgorgement equitable remedy. And they found that when it is restitutionary in nature, which I think we all would agree that a refund is a restitution, and it is incidental to or intertwined with injunctive relief. Now, here- I'm not, counsel, I'm not sure we all agree to that. I persisted in that questioning, but I'm not sure that there was unanimity throughout the courtroom on that. Well, Your Honor, I would defy the court to find that a refund post payment does not bring restitution to the person who alleges an overpayment. What is the site again? The site is 494 U.S. 558. Is this restitution damage, is money an issue? Does the JBI agree that these folks are entitled to this money? No, Your Honor, we don't. And I think it's incumbent upon the plaintiffs to show two main factors that really haven't been addressed yet and would need to be addressed on the merits. They weren't brought to the court's attention in RICO, but they are black letter law. You have JBS Realty, which required the court to, or excuse me, the litigant to show that they did not pass the burden of the tax onto their consumers. We also have, excuse me, there's JBS Realty and I'm sorry, but it's JBS Realty, but there's also a discriminatory impact. You have to show that one of your competitors, a local competitor was advantaged or received some preferential treatment by virtue of this discriminatory law. The law is facially neutral. That was already dealt with previously and the legislature prepared, cured the statute so that it would be a non-discriminatory. We're dealing with an as applied challenge, a factual challenge, which requires the appellant to show with facts on the record, that those two considerations are met. And also just that they paid the tax. We don't necessarily dispute that they paid the tax. I don't think the record has been fully developed to show that, but they had not shown those two prerequisites. So let's assume we sent this back to the territorial courts. What we do in that process and how long it would take to get a decision out of that territorial court. I know they're just ballpark numbers, but. Your Honor, it would be very difficult for me standing here to tell you how long it would take to get these claims. We're talking months, years, or decades? Certainly years. Within years. I can't see this lasting more than decades. There is, to appellant's point, a case that does provide certainly persuasive if not controlling authority as to the constitutionality generally of how the tax is being applied. But that doesn't get appellants where they need to go. They also have to show discriminatory impact and that they didn't pass the tax on. Because if there's no injury, as the Supreme Court held in JDS, you don't have a claim or any relief owed to you. So I would just reiterate, this is restitution. A refund, and although chauffeurs dealt with injunctive relief, or damages incidental to injunctive relief, here appellants require a declaration from the court that the law was unconstitutionally applied to them. So they needed a declaratory judgment in order to obtain the damages that we would put to the court that the declaratory relief is akin to the injunctive relief sought in chauffeurs. Counsel, let me just try to get to a conclusion on what you have just stated, and that goes to the constitutionality question. I'm assuming, but I don't want to assume too much, that you do not or that you no longer dispute whether the constitutionality of the excise tax has been adjudicated. I'm referring, of course, to Reefco, too, which was a not precedential opinion. Well, Your Honor, I submit that the court in Reefco went beyond where, you know, the litigants before the court and found broadly, seemingly broadly, that any person who is charged excise tax over that period must have been charged unconstitutionally. But that would not accord with JDS realty, nor would it be in line with- I'm not sure that you've answered my question, or at least I've not been able to determine that you've clearly answered the question, because doesn't it matter? Doesn't it make a big difference as to whether or not we're doing nothing more, we, in having to decide this appeal, and ultimately whatever court it is, whether we have only before us, what you have suggested is merely a question of relief, of granting restitution or of granting disgorgement, whether or not there may be some unresolved constitutional issue here. Well, Your Honor, we would submit that the Virgin Island Superior Courts are more than capable of granting restitution to these litigants. A federal constitutional issue? I'm sorry, Your Honor? A federal constitutional issue. It certainly is a constitutional issue, but I would submit that the Virgin Islands Courts are more attuned with both manufacturing on the island and the potential reliefs that could be granted in this case. The Virgin Islands Courts are equipped to provide a complete and accurate remedy in this case. All right, and remedy assumes that we have gotten past the question generally of liability, or in this case of constitutionality, and there is nothing more to do than to simply afford the remedy, whatever that is, right? We disagree, Your Honor. We think that these claims... Then don't you complicate the issue for yourself that way? We don't believe so, because we have faith in our courts to competently adjudicate constitutional claims. Let me ask, because you said something that's really resonating that I hadn't thought before. Let's assume the original issue that was advised by the Congress Clause would be the way the excise tax had been enforced against these plaintiffs. You're saying that the fact that the tax may be unconstitutional in its and that they paid the tax is not necessarily entitlement to a refund. They also have to show that they did not pass the burden of that tax onto their customers in order to get a refund. That's what you're saying? Yes, Your Honor. As cited in our brief, JDS Realty Co. decided that. This went all the way up to the Supreme Court. The Supreme Court told the Third Circuit to remand with instructions to dismiss the case altogether, because as had been found in the District Court, there was no injury and therefore no relief was owed. So you're going to figure out that you want to know what the judgment would look like. But if the judgment is saying that the tax was unconstitutional as applied to them, you're saying wouldn't get them anywhere because then they'd have to go show back to State Court or Territory Court to show the second part of that entitlement to a refund that if they didn't pass the tax on. Well, Your Honor, we believe that the Virgin Islands Courts are highly capable of deciding that issue. You're picking a fight, but I'm not trying to start one. I didn't ask you about that. I don't want to try to start what you're saying. You're saying if they got a judgment that that would still require that they go back to the State Court and show that they did not pass the tax onto their customers. Yes, Your Honor. If they failed to show that before the District Court and the District Court did not require that, that would be an error. It's incumbent upon them to show that this law was unconstitutionally applied to them, and we are not suggesting that that is an impossibility. If they can show that there was discriminatory impact, that is, a local competitor or manufacturer of their goods was advantaged, which was required by U.S. Supreme Court precedent, then that as well as that they bore the tax, they didn't pass that on to their consumers, and that they did, in fact, pay the excise tax, then that would show that they were unconstitutionally taxed, and they would be owed either a refund or, more often, a credit. And in Repco, I would just point out that those plaintiffs were afforded a refund to suite, and the law, the regulations were passed to allow for enforcement of the excise tax against locals, and the injunction that the U.S. Supreme Court issued, the U.S. FBI was relieved of that. I assume it's put maybe as fast as you probably, but it's pretty clear that the second part of that test that I want to focus on is the showing of damages, damages here not depending on the tax, but the damages by entitlement to the refund, meaning that second hurdle, that they actually bore the burden of tax and didn't pass it on, that you're submitting should be shown in territorial court, but why couldn't that court, same sort of debate, let's say it would be proper to do so, but that same sort of debate could be made public again to the district court, and then you would get back to what we're starting from. Well, Your Honor, the district court does not have the ability to remand such case to the B.I. Superior Court, and that was a key concern in Levin. The Supreme Court noted that it had the ability to remand such questions back to state court, but the federal court lacked that remedial competence. Therefore, in tax cases in particular, comedy is appropriate. And I would also submit that Quackenbush is completely inapplicable here as this court's precedent has already held. In Coles v. Street, 2002, Judge Ross said that case dealt with common law damages with litigants in federal court under diversity jurisdiction. In Coles, you had statutory damages in court under federal question jurisdiction, and it was inapplicable. And I would also submit that the case that Appellant brought up, Merits, if the court takes a look at that, it will find that one, Merits dealt with Burford's abstention. It was an eminent domain case, not a tax case. That makes a world of difference. Secondly, in Merits, which was only recently decided, they were seeking federal 1983 damages. Here we have claims brought to local, pursuant to local statutory law, which affords the court the ability to provide either a refund or a credit. Let me go back to something you said earlier. You said that federal courts can't remand these sorts of matters back to the territorial courts. Is that correct? Yes, Your Honor. What you're asking for is that the case be dismissed. Exactly, Your Honor. We believe that the district court got this right. The Virgin Islands Supreme Court or Superior Court has, and the Virgin Islands government, has a vested interest in seeing that their statutory tax scheme is cohesive and that they adjudicate these claims. That's why they passed the laws allowing for litigants to bring these claims to the Superior Court. How many other cases out there would be impacted by a decision in this case? Your Honor, to my knowledge, this is the only case in which we have litigants such as these bring challenges to the constitutionality of their excise tax prior to the Reefco decision. That's not to say that there may not be others out there, but I'm unfamiliar with the Superior Court's docket to be able to say whether anyone has brought these claims properly before that court. But we would also just note that Judge Smith and McKee, you both in Regal v. Elliot, Citation 80-Fed-APPX-737, dismissed a claim for 1983 damages in a tax case where there was an adequate state remedy based on fair assessment. And that case has been relied on by district courts for essentially the exact same proposition we're arguing here, which is we have a tax case. Local courts should deal with this when they're adequately equipped. If the court reads our supplemental appendix, I can give you the citation. It's 064-073. With citations to the hearing, we show that we provide, our courts provide that remedy. And there is more than one potential remedy here. So the fact that that is a key concern, and it was in ZNRCAB, and I think that the district court did an excellent job of reviewing not only the rationale for applying tax comedy generally to the USBI, but more importantly, when you have a case such as this where all four of the 11 factors favor abstention, it should be applied. And I would just point out that the concurrence in that would have also helped. The concurrence said that 11, you know, that the majority made 11 into a multi-factor test and took issue with that. And the concurrence was mainly based on the fact that that case involved fees, not taxes. But nevertheless, under the concurrence's formulation, it still would have dismissed a case such as this. Judge Smith? I have nothing further. Thank you. Thank you, Mr. Professor. Thank you, Your Honor. Thank you. Your Honors, counsel for the government was unable to state how long it would take. And all I can say is I can give you my personal experience. I've got cases, a case from 2014, nowhere near close to getting tried, let alone disposed. I have another case from 2016. The cases that I have before the Superior Court with civil cases take literally decades to resolve. And I mean decades, like in excess of 10 years. I also would turn to this Court's attention, this is a matter of public record, to this Court's docket 23-1047. I brought a 2254 before the District Court of Virgin Islands that is now up on appeal because we're talking about taking years to get a habeas case resolved with no end in sight on a habeas case. Habeas cases are supposed to take precedence. You don't have to believe me about how long it takes. You can look to the statements of the Virgin Islands Senators and the legislators. Their specific findings, how long it takes for cases to be resolved, I submit is both candid, but at the same time is a little shocking. But it is the reality on the ground. There's a question here about a problem. Thank you for your comment, sir. Do you agree that in order to actually show your entitlement to the department, you have to be consensual. You have to show that you look like a giant that didn't pass the tax on to customers. That that's a short estimate made before you're legally entitled to a new department. I'm not entirely sure that I would agree with that, but it goes to any particular taxpayer. I'm sorry. It goes to any particular taxpayer. The reason I say that is this. We're talking basic market economics. If the price for a widget is $10, and if you're importing the widgets and you have to pay excise tax when someone else doesn't have to pay excise tax, the market sets the price. So you're not going to separately state your excise tax and pass it on to your customer. You don't detail your invoice in such a way. You don't separately state it out there. You give your customer, your client, one bill, and then as a result of your income, your revenue, you run that through your P&L, and you end up with your net profit or net loss. So I don't think... That's a problem of proof, really, not a problem of substance. And if he's correct about our pooling in JBS Realty, it would seem to me that it might be difficult for you to make the showing unless you have to make the showing here for the last. And it may have to be the difference in price before and after. Okay. I mean, I don't have a problem with that, but the one thing I can say is that issue was not... I don't believe it was raised below. It definitely was not dealt with below. So I would submit it's, at this point, a bit of a hypothetical question that can be dealt with if appropriate on remand. Okay. But I believe that the majority of Brother Counsel's argument bears out that what the GBI wants, which is they don't want to be bound by a rate of go-to, and they want a chance to re-litigate Reefcoe anew, which is exactly why estoppel should be appropriate here, because it is the same underlying facts as to what happened. But we're going to have a Reefcoe 2.0. We're going to have a proverbial Reefcoe groundhog statement for the trial court. I submit that that's entirely the point of estoppel, so that you don't have the same case based on the same underlying facts presented for a trial court. The only difference is, from my lines, it's a different tax payer. And I guess at certain levels, what are we doing? Is this what the kind of— Yeah, for purposes of issue conclusion, the fact that it's a different tax payer, it's not such a minor point. It's a major point. For issue conclusion, but not for estoppel. And that's why the estoppel goes back to Mendoza. Whether Mendoza applies here, that's what's important. Because as GBI has candidly admitted, they don't want to be bound by Reefcoe 2.0. They think they're untethered by Reefcoe 2.0 because Reefcoe 2.0 was non-presidential, and they want a second bite of the apple. And that's what estoppel is intended to present. I believe the case on the Supreme Court is clear. The purpose of estoppel is to prevent the perception of a gaming table. But if Reefcoe 2.0 is non-presidential, isn't it also true that nobody's bound by Reefcoe 2.0 except the parties in that case? Yes, because it's non-presidential. Yes, and that's by virtue of this court's local rules. It's non-presidential. Anyone can cite it as such. But a district court is not bound by it per se. That is different from saying that a party to Reefcoe is not bound by it, which is where estoppel comes to bear. And finally, I'll end on, I don't believe that a refund is in the nature of restitution. I've been doing tax litigation for a long time. I've never seen anything where a statutory scheme provides for a cause of action for a refund suit and waives sovereign immunity that the judgment that the taxpayer gets as a result of taking advantage of that statutory scheme results in an order of restitution and disgorgement that is equitable to life, that it's strictly a legal remedy, a legal cause of action that has certain strictures to it, including an exhaustion requirement. So I don't believe that a tax refund judgment is in any way, shape, or form restitutionary, equitable, or disgorgement in nature. It's a judgment-bound law, the law being the statutory scheme that the Virgin Islands government implemented. So with that being said, thank you for your time. I ask the court to reverse and move the amendment and have the court find that Closed Committee does not apply and that estoppel does apply to the TBI. Thank you. I'd like to thank counsel for the briefs, the 28J letters, the appendices, the arguments. It's an interesting case, a difficult case. Should we get a transcript? Yeah. Transcript. We won't. We won't. There's no transcript. So let me talk to counsel with the transcript. I'm also going to ask that a transcript of this are you going to be prepared and are you split the costs? And we should talk to our corporate court who's with us today in terms of the logistics there. Thank you very much. Thank you.